OPINION
{¶ 1} This is an appeal from a judgment that granted permanent custody of Nichole Clever and Nicholas Clever to Montgomery County Children's Services (MCCS). Both the children's mother, Katrina Moore, and the children's father, Robert Clever, appeal. On appeal, Moore argues that the trial court failed to give sufficient consideration to R.C.2151.414(D) in making its decision. She also argues that the trial court erred in granting permanent custody to MCCS because both the testimony of an independent psychologist and the guardian ad litem's report noted that the children would suffer harm if separated from their parents. Clever argues that the trial court's decision was against the manifest weight of the evidence. Both parents argue that the court erred in not placing the children in a permanent planned living arrangement (PPLA). After reviewing the entire record, we disagree, and accordingly affirm the trial court's judgment.
 {¶ 2} Moore and Clever are an unmarried couple who have lived together for approximately eleven years. They have two children, twelve-year-old Nichole and eleven-year-old Nicholas. Nichole has been diagnosed with attention deficit hyperactivity disorder, fetal alcohol syndrome and oppositional defiant disorder. Nicholas has cerebral palsy and severe developmental disabilities which cause him to function at the level of a two-year-old.
 {¶ 3} On October 5, 1998, police went to Moore and Clever's residence to arrest the two on open warrants. After seeing the condition of the home and discovering that no one else was there to care for the children, the police called MCCS. The caseworker arrived and found the home in a deplorable condition. It was filled with garbage and was infested with roaches and fleas. The children were in an equally deplorable condition. Both children were covered in lice and fleas and were filthy. Nichole had bruises all over her body. She told the caseworker that her mother had hit her with a stick, and showed the caseworker the stick. Nichole also told the caseworker that she had not attended school at all that year. Moore and Clever were arrested on active warrants as well as for child endangerment. Nichole and Nicholas were placed into MCCS's care.
 {¶ 4} On March 19, 1999, MCCS filed a Neglect Complaint against Moore and Clever. The complaint requested temporary custody of Nichole and Nicholas Clever. Custody was granted, and it was extended on at least one other occasion.
 {¶ 5} In August of 2000, MCCS moved for an order of permanent custody of the two children, pursuant to R.C. 2151.413 and R.C.2151.414(E)(2) (4). Following an evidentiary hearing, Magistrate Cranmer filed a Decision of the Magistrate. It stated that no relatives were found who were willing to take custody of the children and that the children have been in custody for at least 12 of 22 months. Based on these findings, and the best interests of the children, MCCS was granted permanent custody of the children.
 {¶ 6} Moore and Clever objected to the findings of the magistrate; however, the trial court adopted the findings, thereby terminating the rights and duties of the natural parents of the children. In its order, the trial court found that the children could not be placed with their parents within a reasonable time and it was in the best interests of the children to grant permanent custody to MCCS.
 {¶ 7} The trial court based its decision on the special needs of the children and on evidence that showed that neither parent was capable of caring for the children. The court pointed to Moore's lack of parenting skills and to concerns raised about Clever's angriness, resentfulness and inability to put his family's needs above his own. Though both parents completed their case plans and improved their parenting skills, the testimony of two expert psychologist witnesses indicated that neither parent was capable of caring for the significant needs of the children within a reasonable time. The court found that there were no relatives who had come forward to take custody of the children. Additionally, the court relied on testimony from the adoption supervisor at MCCS who testified that there was an 80% likelihood that the children would be adopted in the next twelve to eighteen months.
 {¶ 8} Moore and Clever filed separate appeals.
 KATRINA MOORE'S FIRST ASSIGNMENT OF ERROR {¶ 9} "THE TRIAL COURT ERRED IN NOT GIVING SUFFICIENT CONSIDERATION TO THE FACTORS LISTED IN R.C. 2151.414(D) CONCERNING THE DETERMINATION OF THE BEST INTERESTS OF THE CHILDREN."
 {¶ 10} Moore argues that the trial court did not sufficiently consider the factors listed in R.C. 2151.414(D) when it determined that it was in her children's best interests to grant permanent custody to MCCS. While it is unclear, Moore seems to be arguing that there was not clear and convincing evidence to support any of the five statutory factors the court considered in determining the children's best interests of her children.
 {¶ 11} In child custody cases, the focus of any decision must be on what is in the child's best interests. deLevie v. deLevie (1993),86 Ohio App.3d 531, 539. The trial court's discretion should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." Miller v. Miller (1988),37 Ohio St.3d 71, 74 (citations omitted).
 {¶ 12} Although the trial court's discretion in a custody case is broad, it is not absolute. In the Matter of Calvin and Tonya Beal
(October 5, 1992), Clark App. No. 2903. A trial court's decision in a custody case is "subject to reversal upon a showing of an abuse of discretion." Miller, supra at 74. `The term "abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 13} R.C. 2151.414(B)(2) governs the termination of parental rights in a natural child when the child is neither abandoned nor orphaned. It provides that a court may grant custody of a child to a movant if the court determines, by clear and convincing evidence, that (1) "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents"; and (2) "it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody." R.C. 2151.414(B)(1). Evidence is clear and convincing if it produces in the mind of the trier of fact "a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of syllabus.
 {¶ 14} R.C. 2151.414(E) provides a list of sixteen factors which a court must use to determine whether a child can be placed with his natural parents within a reasonable time, if ever. If the court determines that one or more of these factors exist as to each of the child's parents, the court must find that either the child cannot be placed with his parents within a reasonable time or that the child should never be placed with either parent. Once the trial court finds from all relevant evidence that one or more of these factors exist, it then must consider whether permanent commitment is in the best interest of the child. In re William S., 75 Ohio St.3d 95, 1996-Ohio-182.
 {¶ 15} R.C. 2151.414(D) lists factors a court must consider when determining the best interests of the child. It states that a court shall consider all relevant factors, including, but not limited to:
 {¶ 16} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 17} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 18} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 19} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 20} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 21} After examining the record, we find no abuse of discretion on the part of the trial court. Additionally, we find that there was clear and convincing evidence that supports the trial court's decision that granting permanent custody to MCCS is in the children's best interests.
 {¶ 22} Our review of the record reveals that evidence was presented on every relevant factor that R.C. 2151.414(D) requires the court to consider. There is an abundance of testimony in the record demonstrating that the children have bonded with each other, with their biological parents, and with their foster parents. (T. 84, 157, 161, 163, 165) There also was testimony that Nichole has concerns about returning to live with her biological parents. (T. 80, 99) There was testimony concerning the duration of time the children have been in the temporary custody of MCCS. (T. I93) Finally, there was testimony about the children's need for a legally secure permanent placement and whether that type of placement could be achieved without a grant of permanent custody to MCCS. (T. 83-84, 94, 162-63)
 {¶ 23} Based upon the evidence presented at trial, we do not find that the trial court's decision to award permanent custody to MCCS was unreasonable, arbitrary or unconscionable. Because the award was based upon a substantial amount of credible and competent evidence, we must defer to the trial court's factual determination that it was appropriate for MCCS to receive permanent custody of the children. We overrule this assignment of error.
 KATRINA MOORE'S SECOND ASSIGNMENT OF ERROR {¶ 24} "THE COURT ERRED IN GRANTING PERMANENT CUSTODY WHEN BOTH THE INDEPENDENT PSYCHOLOGIST'S TESTIMONY AND THE GUARDIAN AD LITEM'S REPORT NOTED THE HARM WHICH THE CHILDREN WOULD SUFFER IF SEPARATED FROM THE PARENT(S)."
 {¶ 25} Moore argues that the trial court erred because the decision to grant permanent custody to MCCS was in conflict with evidence presented at trial. She bases her opinion on the testimony of Dr. Harris, an independent psychologist, and on the report of Leslie Woodward, the children's guardian ad litem.
 {¶ 26} Dr. Harris testified that the children should not be separated from their parents and the bond between them should remain intact. (T. 111-12) He also testified that severing the relationship with the parents, the mother more so than the father, would be detrimental to the children. (T. 101) Moore argues that although Woodward's report ultimately recommends granting permanent custody of the children to MCCS, Woodward made it clear that the children will be emotionally harmed if all contact between Moore and the children is severed. She explained that it is important that Nichole and Nicholas know their mother loves them, even if she is an incapable care giver.
 {¶ 27} While the above statements are true, there was a significant amount of other evidence that supported the trial court's decision. In his testimony, Dr. Harris testified that the permanent placement of Nichole might be better for her because of the uncertainty that she could not be guaranteed to remain in the same foster home. (T. 93) Additionally, despite her concerns, Woodward did recommend that MCCS be given permanent custody of the children. Finally, Erika Ragan, the children's current caseworker, testified that the agency feels that it is in the children's best interests to place them in the permanent custody of MCCS.
 {¶ 28} While some of the evidence may be conflicting, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,23. Because competent credible evidence that supports the trial court's decision is present, and the trial court committed no abuse of discretion, we overrule this assignment of error.
 ROBERT CLEVER'S FIRST ASSIGNMENT OF ERROR {¶ 29} "THE TRIAL COURT ERRED WHEN IT GRANTED THE MOTION FOR PERMANENT CUSTODY OF NICHOLE AND NICHOLAS CLEVER BECAUSE THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 30} Clever argues that the evidence presented at trial was not sufficiently clear and convincing to support the trial court's decision to grant permanent custody of Nichole and Nicholas to MCCS. He points to the facts that both parents have completed their case plan objectives, have maintained stable housing, have completed parenting and psychological assessments, have completed parenting classes, and have visited the children on a regular basis. Clever also points to the testimony of Dr. Victor McCarley, who stated that both Moore and Clever were stable. Dr. McCarley also testified that he believes that Robert Clever could parent the children, as long as he remains drug free.
 {¶ 31} "[W]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol, supra at 21. "The standard of review for weight of the evidence issues, even where the burden of proof is `clear and convincing,' retains its focus upon the existence of some competent, credible evidence." Hawn v. Pleasant (May 28, 1999), Scioto App. No. 98CA2595. "In other words, when reviewing awards of permanent custody to public children services agencies, judgments supported by some competent, credible evidence must be affirmed." In re P.R. (April, 25 2002), Cuyahoga App. No. 79609, 2002-Ohio-2029.
 {¶ 32} The evidence demonstrating the successful efforts Moore and Clever have made to improve their ability to care for their children is impressive. Even so, the relevant issue is whether the children can be placed or should be placed with their parents within a reasonable time. R.C. 2151.414(B)(1). On that point, the evidence demonstrates that the improvements the parents have made in their lives are tentative and, perhaps, temporary, and that they are at risk of relapse. Robert Clever's ability to parent the children to which Dr. McCarley testified was conditioned on his ability to remain drug free. The character of that evidence, and the fact that the trial court was in a position to make the required assessments first hand, with the parties and witnesses before it, leads us to conclude that the trial court's findings should not be disturbed. This assignment of error is overruled.
 KATRINA MOORE'S THIRD ASSIGNMENT OF ERROR {¶ 33} "THE COURT ERRED IN NOT PLACING THE CHILDREN IN A PERMANENT PLANNED LIVING ARRANGEMENT WITH MCCS AS THIS WAS MOST CONSISTENT WITH THE BEST INTEREST OF THE CHILDREN."
 ROBERT CLEVER'S SECOND ASSIGNMENT OF ERROR {¶ 34} "THE TRIAL COURT ERRED IN NOT ORDERING THE CHILDREN BE PLACED IN A PLANNED PERMANENT LIVING ARRANGEMENT WHEN SUCH AN ORDER WAS SUPPORTED BY THE EVIDENCE ADDUCED AT TRIAL AND WHICH EVIDENCE DID SATISFY THE STATUTORY REQUIREMENTS AND CONDITIONS WHICH ALLOW A DISPOSITIONAL ORDER OF PLANNED PERMANENT LIVING ARRANGEMENT."
 {¶ 35} Both Moore and Clever argue that the trial court should not have granted MCCS permanent custody of Nichole and Nicholas, and that the more appropriate decision would have been to place the children in a PPLA because this arrangement is more consistent with the children's best interests.
 {¶ 36} R.C. 2151.353(A) states that if a child is adjudicated an abused, neglected, or dependent child, the court may make one of several orders of disposition. R.C. 2151.353(A)(5) states that a court may:
 {¶ 37} "Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:
 {¶ 38} "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
 {¶ 39} "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
 {¶ 40} "(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living."
 {¶ 41} R.C. 2151.353(A)(5) mandates that in order for the court to order a PPLA a public children services agency or private child placing agency must request that disposition. We have previously stated that a court has discretion to consider the option of a PPLA even when an appropriate agency requests permanent only custody. In the Matter ofBuchanan (July 25, 1997), Clark App. No. 96-CA-0063; Beal, supra.
 {¶ 42} Had MCCS requested the children be placed in a PPLA, rather than requesting permanent custody, or had the court chosen to consider placing the children on a PPLA, there may have been sufficient evidence to support it. Testimony showed that Moore attended every visitation session with her children from August, 2000 through the trial in June, 2002. (T. 157) There is also evidence that she attended a significant number of the available sessions before that. Dr. Harris testified that Nichole said that while she would like to stay in her foster home, she wanted to see more of her biological family. (T. 99) Additionally, Dr. Harris testified that cutting off the children from their parents would be detrimental to the children. (T. 101) The following dialog transpired between the magistrate and Dr. Harris:
 {¶ 43} "Court: Doctor Harris, do you feel that permanent custody to the Agency, meaning no further parental visits, is in the best interests of the children, vis a vis long term foster care where there's a possibility they stay in the same home and maintain contact with the family?
 {¶ 44} "Witness: You said permanent custody with no parental visits?
 {¶ 45} "Court: Right. Versus long term foster care or planned permanent living arrangement with continued visitation.
 {¶ 46} "Witness: I would certainly prefer an arrangement where there was some contact, at least with the mother. I think there is a very strong attachment between Nichole and her mother." (T. 94).
 {¶ 47} Several witnesses testified that the children had formed a bond with both their biological parents and their foster parents. Neither Nichole's or Nicholas' foster parents have plans to adopt either child. Evidence was presented by MCCS that both children are adoptable, and that adoption is likely. The trial court urged MCCS to consider an "open adoption" that would preserve the parent/child relationships.
 {¶ 48} The trial court's decision to give permanent custody of the children to MCCS so it can put the children up for adoption will likely sever all bonds the children have with both their biological parents and their current foster parents. There is no testimony or evidence presented that shows that permanently severing the children's relationship with their biological parents is in the children's best interests. Finally, there appears to be sufficient evidence that R.C. 2151.353(A)(5)(a) or (b), which concerns the physical, mental, or psychological problems of the parents and children, permits a PPLA in this instance.
 {¶ 49} Regardless of whether the trial court was permitted to place the children in a PPLA, it chose to award the permanent custody of the children to MCCS. We do not find any abuse of discretion on the part of the trial court in its decision. As we stated earlier, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." Bechtol, supra at 23. The record shows some competent, credible evidence supporting the trial court's grant of permanent custody to the county, "therefore, we must affirm that court's decision, regardless of the weight we might have chosen to put on the evidence." P.R., supra. We do not find that the trial court's decision was unreasonable, arbitrary or unconscionable. We must defer to the trial court's factual determination and overrule these assignments of
 {¶ 50} error.
 Conclusion {¶ 51} Having overruled the assignments of error presented in both appeals, we will affirm the judgment from which the appeals were taken.
BROGAN, J. and FAIN, J., concur.